UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| PERRY BATES, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) No. 1:24-CV-00039-JRG-SKL |
| TENNESSEE VALLEY AUTHORITY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

In this civil action, Plaintiff Perry Bates alleges that his former employer, Defendant Tennessee Valley Authority ("TVA"), discriminated against him in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Now before the Court is TVA's motion for summary judgment [Doc. 34]. Plaintiff responded in opposition [Doc. 38] and Defendant replied [Doc. 39]. As discussed below, Defendant's summary judgment motion will be **GRANTED** and this case will be **DISMISSED with PREJUDICE**.

I.  BACKGROUND

Plaintiff Perry Bates, who is African American, was employed as a Mechanical Maintenance Technician ("machinist") at TVA's Sequoyah Nuclear Plant ("Nuclear Plant") from 2001 until 2019. [Doc. 35-1 at 71]. In November 2017, he was working in the heating ventilation and air conditioning ("HVAC") maintenance crew, where his primary duty was to maintain and repair HVAC equipment inside the Nuclear Plant. [Doc. 38-1 at 209–10].

On November 28, 2017, Plaintiff was exposed to the degreasing agent Rx-11 flush mixed with Freon that discharged from a piece of equipment. [Doc. 35-1 at 99–100]. At the time, he was working with another TVA employee, Michael Karr. [*Id.* at 99]. When Bates returned to work the

next day, he informed his manager, Martin Smith, about the exposure. [*Id.* at 101–03]. Bates told Smith he believed he needed to be evaluated but did not specifically ask to be seen by TVA medical staff. [*Id.* at 101].

On December 13, 2017, Bates worked with another employee, Ricky Gann, on the same equipment he had serviced on November 28, 2017. [*Id.* at 104]. When Gann opened up the system to remove a gasket, Plaintiff "got a whiff" of Rx-11 flush and Freon. [*Id.*]. Plaintiff completed servicing the equipment and went back downstairs, then began to feel extremely dizzy. [*Id.* at 105]. After lunch, Plaintiff told TVA Foreman Chad Nunley and Production Manager Napoleon Dawson about the exposure and how badly he felt. [*Id.* at 105–06]. He did not specifically ask to be taken to TVA Medical. [*Id.* at 108]. Dawson advised Bates to go to his primary care physician. [*Id.* at 106].

On December 22, 2017, Bates presented Nurse Practitioner Gary Elledge with a note from his primary care physician, documenting that Plaintiff had reported respiratory and cognitive symptoms consistent with Freon exposure. [Doc. 38-1 at 731]. The note recommended that Plaintiff be provided with enhanced ventilation and/or standard personal protection equipment ("PPE"). [*Id.*]. When speaking with Elledge, Bates described his symptoms as a feeling of being "out of body, out of mind . . . where [he] didn't realize where exactly [he] was at." [Doc. 35-1 at 116]. Elledge told Bates that for his own protection, Bates's medical clearances would be revoked and he would be removed from duty pending further investigation. [*Id.* at 117, 122; Doc. 38-1 at 525]. Bates agreed, stating "okay, whatever you got to do, you know . . . because my situation has gotten pretty serious, pretty severe . . . it's like life or death to me to protect myself." [Doc. 35-1 at 117]. Then, consistent with the decision to revoke his medical clearances, security pulled Bates's access badge and escorted him out of the Nuclear Plant. [*Id.* at 117; Doc. 38-1 at 525]. One of

Bates's supervisors gave him a ride home, since Plaintiff had carpooled to work that day and did not have his own transportation. [Doc. 35-1 at 117].

Before leaving the plant on December 22, 2017, Bates asked Elledge if he would "still be getting paid," and Elledge assured him that he would. [*Id.* at 125]. At that time, Bates expected to be paid administrative leave. [*Id.* at 127]. However, on January 22, 2018, Plaintiff received his first paycheck since being removed from duty and learned that he had been charged 80 hours of annual leave without his permission. [*Id.* at 126–27]. Several days later, he called Human Resources about filing a workman's compensation claim and asked why his annual leave had been charged. [*Id.*]. The HR representative indicated that Bates would need to ask his supervisors that question.[1] [*Id.*].

On January 26, 2018, Plaintiff made an informal complaint to the Equal Opportunity Compliance Counselor. [Doc. 38-1 at 38].[2]

On April 5, 2018, TVA Nurse Practitioner Elledge cleared Bates to return to work with restrictions set out by his doctor, which were no exposure to Freon or refrigerant chemicals. [Doc. 35-5 at 2]. On April 10, 2018, Bates engaged in an interactive discussion with his supervisor, Seth Rogers, and accepted a modified work assignment, temporarily reassigning him to another work crew where he would not be exposed to refrigerants. [Doc. 38-1 at 406–07; Doc. 35-1 at 156.].

On April 18, 2018, Bates presented TVA Medical with a note from an urgent care doctor, advising that Plaintiff should be restricted from exposure to dust or fumes until April 23, 2018.

---

[1] According to his deposition testimony, Bates did not ask anyone in the mechanical maintenance department about being charged annual leave until he returned to work in April 2018. [Doc. 35-1 at 127]. It is not clear who he spoke with or what he was told.

[2] It is unclear exactly what occurred between January and April 2018 when Bates returned to work. However, the record reflects that during that time, Plaintiff was evaluated by several different doctors. [Doc. 35-1 at 51; Doc. 38-1 at 499, 759]. He also exhausted his paid leave and was approved for leave under the Family Medical Leave Act ("FMLA"). [Doc. 35-1 at 127].

3

[Doc. 38-1 at 410, 440]. On April 19, 2018, Bates engaged in an interactive discussion with Mechanical Maintenance Superintendent, Ronald Walker, who concluded that no temporary work assignment was available within the current restrictions. [*Id.* at 408–09]. Bates signed a work assignment form, acknowledging that no temporary work assignment was available. [*Id.* at 409].

On April 24, 2018, Plaintiff provided TVA Medical with a note from his primary care physician, stating that he should not be exposed to excessive, unprotected dust and calling for one to two weeks of exemption from duties, except sedentary duties or office work. [*Id.* at 416–17]. During an interactive discussion on April 25, 2018, Foreman Seth Rogers informed Bates that there was no temporary work assignment available. [*Id.* at 417]. Bates signed a work assignment form, acknowledging that he understood. [*Id.*].

On May 16, 2018, Superintendent Walker engaged in an interactive discussion with Plaintiff and informed him that no modified work assignment was available. [*Id.* at 466]. In a letter dated the same day, Walker explained that since no accommodation was available, he was placing Plaintiff in leave-without-pay status and that Plaintiff could use sick leave hours, if available, or continue to use FMLA hours. [*Id.*]. Further, Walker asked Plaintiff to provide Nurse Practitioner Elledge with updated medical documentation after his upcoming doctor's appointment, so that Walker and Plaintiff could "discuss next steps." [*Id.*].

Bates filed a formal Equal Employment Opportunity ("EEO") complaint on May 16, 2018, alleging that TVA had discriminated against him based on his disability and race. [*Id.* at 38]. The complaint included allegations that TVA denied Plaintiff medical treatment after the Freon exposures, charged him annual leave without his approval, delayed providing reasonable accommodation, and denied reasonable accommodation on May 16, 2018. [*Id.* at 39].

4

On May 23, 2018, Bates provided TVA Medical with a new doctor's note, indicating that he was now "unrestricted" for his usual duties, provided he had access to PPE and was not exposed to Freon. [*Id.* at 325, 431]. Bates provided a similar doctor's note on June 4, 2018, reiterating that he could return to his usual work if there was no Freon exposure. [*Id.* at 325].

On June 7, 2018, Superintendent Walker had an interactive discussion with Plaintiff and offered him a modified work assignment, which he accepted. [*Id.* at 85–86]. While Plaintiff went on to have other interactions with TVA concerning accommodation for his disability [Doc. 35-5 at 4], they are beyond the scope of this action. [Doc. 38 at 3; *see generally* Doc. 1; Doc. 38].

After exhausting his remedies with the Equal Employment Opportunity Commission ("EEOC"), Plaintiff timely filed this lawsuit, alleging employment discrimination under the Rehabilitation Act and Title VII. [Doc. 1]. Defendant then moved for summary judgment. [Doc. 34]. This matter is ripe for review.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the moving party shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). To establish an entitlement to summary judgment, the moving party must demonstrate that the nonmoving party cannot establish an essential element of his case for which he bears the ultimate burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," then there is a genuine dispute as to a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If no proof is presented, however, the Court does not presume that the nonmovant "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

5

### III. DISCUSSION

#### A. Procedural Issues

Defendant raises several procedural issues, which the Court will address before turning to the merits of Plaintiff's claims.

##### 1. Exhaustion

First, Defendant asserts that Plaintiff did not exhaust his claim of disability harassment or his allegation that TVA retaliated against him for filing the EEO complaint. [Doc. 35 at 9–10]. "Before filing claims under Title VII or the Rehabilitation Act, a federal employee . . . must exhaust [his] administrative remedies." *Bryant v. Wilkie*, 834 F. App'x 170, 173 (6th Cir. 2020). Exhaustion is a mandatory precondition to any civil action claiming employment discrimination by a federal employer. *Brown v. General Services Administration,* 425 U.S. 820 (1976). However, this requirement is not intended to be overly technical. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006). "The EEOC complaint should be liberally construed to encompass all claims reasonably expected to grow out of the charge of discrimination." *Randolph*, 453 F.3d at 732.

The claims cited by TVA are not barred on exhaustion grounds. Contrary to Defendant's argument, the EEO complaint included an allegation of harassment based on disability. [Doc. 38-1 at 39]. While the EEO complaint did not include an allegation that Plaintiff suffered reprisal for filing the EEO complaint, that issue was reasonably within the scope of the administrative proceedings. Indeed, the Sixth Circuit has recognized that "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier

charge; the district court has ancillary jurisdiction to hear such a claim [.]." *Ang v. Procter & Gamble Co.,* 932 F.2d 540, 546-47 (6th Cir. 1991) (citation omitted).[3]

### 2. Whether Plaintiff Properly Raised a Failure to Accommodate Claim

In addition, Defendant argues that Plaintiff should not be allowed to raise a failure to accommodate claim because, even though the Complaint contains allegations of failure to accommodate, that claim was not explicitly pled. [Doc. 35 at 8; Doc. 39 at 7]. Plaintiff maintains that a failure to accommodate claim can be understood from the allegations raised in the Complaint. [Doc. 38 at 15]. "Generally, the Sixth Circuit holds that where a plaintiff did not include a claim in [his] complaint and did not move to amend [his] complaint, it would be 'unfair surprise' to permit [him] to raise the claim at the summary judgment stage." *Martin v. Moss Law Firm, P.C.*, No. 1:23-CV-926, 2025 LX 170018, at *6 n.1 (W.D. Mich. Feb. 28, 2025) (citing *Tucker v. Union of Needletraders, Industrial, and Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)).

Defendant is correct that a claim of failure to accommodate is not included in the section of the Complaint that enumerates Plaintiff's claims. [*See* Doc. 1 at 4–6]. However, the facts section of the Complaint expressly alleges that "[f]rom December 2017 until May 2018, Plaintiff's requests for reasonable accommodation were not properly handled and/or constructively denied." [*Id.* at 4]. And an implicit allegation of failure to accommodate underpins his other claims; to some extent, he argues that Defendant subjected him to disparate treatment, harassment, and retaliation *by* failing to accommodate him. Moreover, out of an abundance of caution, Defendant addressed

---

[3] TVA also argues that Bates failed to properly exhaust certain issues alluded to in his deposition, namely, that TVA failed to promote him, denied him opportunities for training, and removed him from temporary foreman duties because he is African American. [Doc. 35 at 10–11]. However, in his summary judgment response, Bates clarifies that he is not attempting to raise claims based on those issues. [Doc. 38 at 24]. Hence, Defendant's objection is moot.

the merits of the failure to accommodate claim in its Reply. [Doc. 39 at 7–8]. Given that the issue of accommodation is central to Plaintiff's complaint—as it was to the administrative proceedings—and the parties have briefed the issue, the Court will assume, for the purpose of its analysis, that a failure to accommodate claim has been sufficiently pled. *See West v. Sec'y of Veterans Affairs*, No. 3:22-CV-292, 2024 U.S. Dist. LEXIS 85975, at *17 (S.D. Ohio May 13, 2024) (deciding, "in an abundance of caution" to analyze a retaliation claim that was not explicitly pled, where the word "retaliatory" was used in the complaint and the parties had briefed the issue).

### 3. Hearsay Objection

Defendant also objects that Plaintiff attached the administrative "Report of Investigation" [Doc. 38-1] to his Response without regard to the admissibility of the contents. [Doc. 39 at 2]. In particular, TVA contends that several doctor's notes, referenced in Plaintiff's Response, are inadmissible hearsay. [*Id.* at 2].

Hearsay is an out of court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). As Defendant points out, the Court cannot consider hearsay when ruling on a motion for summary judgment. *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994). To the extent Plaintiff offers the doctor's notes to prove that he has a disability or that certain accommodation was necessary, those records are hearsay and as such, are inadmissible unless an exception to the hearsay rule applies. This evidentiary point has little impact here, however, since Defendant has conceded, for the purposes of summary judgment, that Plaintiff has a disability and that reasonable accommodation was necessary. [*See* Doc. 39 at 8]. On the other hand, to the extent Plaintiff offers the doctor's notes to show that TVA received notice of his disability and requests for accommodation, they are not being offered for their truth and therefore are not hearsay. *See Branscumb v. Horizon Bank*, No. 24-1357, 2025 LX 171176, at *5 (6th Cir. Jan. 8, 2025) ("A

8

statement used to establish its effect on a listener is not hearsay because the statement's underlying truth is beside the point.").

### B. Merits Analysis

The Court now turns to the merits of Plaintiff's claims. Plaintiff maintains that TVA discriminated against him by failing to provide him with reasonable accommodation for his disability in violation of the Rehabilitation Act and subjecting him to disparate treatment, harassment, and retaliation in violation of the Rehabilitation Act and Title VII. Defendant argues that it is entitled to summary judgment because no reasonable jury could find that TVA discriminated against Plaintiff based on his race or disability. The Court agrees.

#### 1. Failure to Accommodate

First, Plaintiff claims that TVA failed to provide him with reasonable accommodation for his disability. To establish a failure to accommodate theory under the Rehabilitation Act, Plaintiff must show that TVA reasonably could have accommodated his disability but refused to do so. *Finley v. Huss*, 102 F.4th 789, 820 (6th Cir. 2024). Plaintiff bears the initial burden of showing that (1) he has a disability; (2) he was qualified for the position; (3) the agency was aware of his disability; (4) accommodation was needed and (5) the agency failed to provide reasonable accommodation. *Gaines v. Runyon*, 107 F.3d 1171, 1175 (6th Cir. 1997). If Plaintiff establishes a prima facie case, the burden then shifts to Defendant to show that the accommodation would cause it undue hardship. *Id.* at 1175–76.

For the purposes of summary judgment, Defendant concedes that Plaintiff has a disability, that he was qualified for his position, that the agency was aware of the disability, and that reasonable accommodation was needed. [Doc. 39 at 7]. However, Defendant maintains that Plaintiff cannot show that reasonable accommodation was denied. [*Id.* at 8].

First, Plaintiff asserts that he was denied reasonable accommodation when TVA's medical unit revoked his medical clearances and removed him from the plant on December 22, 2017. [Doc. 38 at 16]. He contends that instead, TVA should have provided him with the enhanced ventilation and/or standard PPE requested in his doctor's note. [*Id.* at 16]. However, TVA did not "deny" Plaintiff these accommodations. When Plaintiff presented the doctor's note to Nurse Practitioner Elledge, he described his symptoms as "out of body, out of mind . . . where [he] didn't realize where exactly [he] was." [Doc. 35-1 at 116]. Elledge then determined that for Plaintiff's safety, his medical clearances should be revoked pending further investigation. At the time, Plaintiff *agreed* that was the appropriate course of action. And TVA permitted him to use paid leave while the situation was resolved, which constituted reasonable accommodation. *See Frazier v. Donahoe*, No. PWG-14-3974, 2016 U.S. Dist. LEXIS 33634, at *19-20 (D. Md. Mar. 15, 2016) ("Where an employee is unable to perform the essential functions of his or her job, permitting that employee to use annual or sick while the situation is resolved is a reasonable accommodation.").

Second, Plaintiff claims that he was denied reasonable accommodation on April 19 and April 25, 2018, when TVA told him there were "no temporary modified work duties available." [Doc. 38 at 17]. He suggests that this explanation was pretextual, since TVA was able to accommodate him on April 10, 2018. [*Id.* at 16–17]. However, after April 10, 2018—when Plaintiff's only restriction was no exposure to Freon—Plaintiff's restrictions became more extensive. On April 19, 2018, Plaintiff provided TVA with a note from an urgent care doctor, mandating no exposure to dust or fumes. And on April 25, 2018, he provided a note from his primary care physician, restricting Plaintiff's exposure to excessive dust and authorizing sedentary or office duty only. On both occasions, after engaging in an interactive discussion, Plaintiff signed

10

a form acknowledging that there was no modified work assignment available. And even now, he has not shown that there was an available work assignment, for which he was qualified, that TVA could have offered him. *See Hoskins v. Oakland Cnty. Sheriff's Dep't*, 227 F.3d 719, 728 (6th Cir. 2000) ("When the employee seeks a reasonable accommodation, [he] must establish that a 'reasonable' accommodation is possible, and bears a traditional burden of proof that [he] is qualified for the position with such reasonable accommodation."). Therefore, Plaintiff fails to show that reasonable accommodation was denied.

Next, Plaintiff asserts that TVA denied him reasonable accommodation on May 16, 2018, when Superintendent Walker placed him on leave-without-pay status based on "outdated restrictions." [Doc. 38 at 17]. Plaintiff fails to develop this argument. He does not explain which restrictions he believes were "outdated." And he cites no evidence that on May 16, 2018, he requested a reasonable accommodation, which was denied.[4]

Finally, Plaintiff contends that TVA unreasonably delayed accommodating him after he presented a new doctor's note on May 23, 2018, narrowing his restrictions to "no Freon exposure." [Doc. 38 at 17]. "Although a delay in granting a reasonable accommodation may support a disability discrimination claim, the delay must be unreasonable for it to be actionable." *Edmunds v. Bd. of Control of E. Mich. Univ.*, No. 09-11648, 2009 LX 73450, at *17 (E.D. Mich. Dec. 23, 2009). Here, there were ten workdays between the time that Plaintiff presented the May 23 doctor's note and when TVA offered him a modified work assignment. During that interval,

---

[4] The record shows that in the EEOC proceedings, Plaintiff asserted that Superintendent Walker denied him reasonable accommodation on May 16, 2018, because he was not "allowed to do office work, per [his] restrictions while waiting to see a specialist about [his] condition from the exposures." [Doc. 38-1 at 55]. However, Plaintiff has not shown that there was an office job available that TVA reasonably could have offered him. And TVA was not obligated to create such a position if none existed. *Burns v. Coca-Cola Enterprises, Inc.*, 222 F.3d 247, 257 (6th Cir. 2000) ("Employers are not required to create new jobs, [or] displace existing employees from their positions . . . in order to accommodate a disabled individual.").

11

Plaintiff needed to be cleared by TVA Medical. [*See* Doc. 38-1 at 546–50]. And there is no evidence that TVA acted in bad faith. "[E]mployers need not immediately implement or accept accommodations proposed by an employee." *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 812–13 (6th Cir. 2020) (citing *Gerton v. Verizon S. Inc.*, 145 F. App'x 159, 168 (6th Cir. 2005)). Under these circumstances, and given the absence of evidence of bad faith, the Court does not believe that a ten-day delay was unreasonable.[5]

In sum, the record does not support Plaintiff's claim that TVA failed to provide him with reasonable accommodation. Thus, this claim fails.

### 2. Intentional Discrimination

Plaintiff also raises claims of disparate treatment, hostile work environment, and retaliation under the Rehabilitation Act and Title VII. Unlike a failure to accommodate claim—which can be proven simply by showing that reasonable accommodation was denied—these claims of intentional discrimination require a showing of discriminatory intent. *See Finley*, 102 F.4th at 823 (citation omitted) ("To successfully bring an intentional-discrimination claim, a plaintiff must show unfavorable treatment on the basis of his disability. Proof of the defendant's motive is key."); *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 346 (6th Cir. 2012) (quoting *Ricci v. DeStefano*, 557 U.S. 557 (2009)) (explaining that to prevail on a Title VII claim a plaintiff must "establish that the defendant had a discriminatory intent or motive for taking a job-related action.").

Discriminatory intent may be shown through direct or circumstantial evidence. *Chattman*, 686 F.3d at 346. When, as here, a plaintiff relies on circumstantial evidence to show discriminatory

---

[5] Based on TVA Medical's clinic notes, some part of the delay in returning Plaintiff to work occurred due to the fact that his supervisors, Seth Rogers and Ronald Walker, were out of the office the week of May 28, 2018. [Doc. 38-1 at 548].

intent, courts apply the well-known *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under that framework, a plaintiff must first set forth a prima facie case of discrimination. *Id.* The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* If the defendant carries this burden, the plaintiff must then show by a preponderance of the evidence that the reasons offered by the defendant were pretext for discrimination. *Id.*

In support of these claims of intentional discrimination, Plaintiff relies on the same facts discussed above—his removal from work duties on December 22, 2017; the "failure" to provide him with modified work assignments meeting his restrictions on April 19, April 25, and May 16, 2018; and the 10-day delay providing a modified work assignment after his restrictions were eased on May 23, 2018. [Doc. 38 at 18–25]. In addition, he claims that he was discriminated against when TVA denied him access to TVA Medical following the Freon exposures, [*id.* at 18, 20, 22], although he acknowledges he did not specifically ask to go to TVA Medical. [Doc. 35-1 at 101, 108]. And he claims that TVA showed disability and/or race-related animus when it charged him annual leave without his permission after his medical clearances were revoked, [Doc. 38 at 19, 20, 22, 25], although his sick leave was already exhausted, [Doc. 38-1 at 249], and he has not demonstrated that he was entitled to any other kind of paid leave.

Based on these facts, no reasonable jury could find that Plaintiff was subject to disparate treatment. To establish a prima facie claim of disparate treatment under Title VII or the Rehabilitation Act, Plaintiff must show that: (1) he was a member of a protected class; (2) he suffered an adverse employment action[6]; (3) he was qualified for the position; and (4) similarly

---

[6] In the context of a disparate treatment claim, an adverse employment action is a materially adverse change in employment status, "such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Industries v. Ellerth,* 524 U.S. 742, 761 (1998).

13

situated non-protected employees were treated more favorably. *Davis v. Potter*, No. 5:06-cv-44, 2008 U.S. Dist. LEXIS 11711, at *8–9 (W.D. Mich. Feb. 5, 2008) (citing *DiCarlo v. Potter,* 358 F.3d 408, 414 (6th Cir. 2004)). Plaintiff cannot show that he suffered an adverse employment action because his changes in employment status were the result of Defendant's reasonable efforts to accommodate his disability. Also, he fails to identify similarly situated non-African American or non-disabled employees who were treated more favorably.[7]

Moreover, Plaintiff fails to show that he was subjected to a hostile work environment. To establish a prima facie claim of hostile work environment under Title VII or the Rehabilitation Act, Plaintiff must demonstrate that (1) he is a member of a protected class; (2) he was subject to unwelcome discriminatory or retaliatory harassment[8]; (3) the harassment complained of was based on his race, disability, or protected activity; (4) the harassment created a hostile work environment; and (5) there exists some basis for liability on the part of the employer. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000) (discussing standard for hostile work environment under

---

[7] Plaintiff argues that he is not required to provide a comparator for his Title VII claim. [Doc. 38 at 25]. It is true that the identification of a comparator is not an element of a disparate treatment claim. But without one, Plaintiff must provide other evidence supporting an inference of discriminatory intent. *See Haji v. Columbus City Sch.*, 621 F. App'x 309, 315 (6th Cir. 2015) (citation omitted) (explaining that a Title VII plaintiff seeking to prove disparate treatment is not always required to establish the last prong of the *McDonnell Douglas* test, but "there must be some additional evidence tending to establish the inference of discrimination"); *Gohl v. Livonia Pub. Sch. Sch. Dist.*, 836 F.3d 672, 683 (6th Cir. 2016) (making a similar observation, in the context of a disability discrimination claim). In an attempt to show that he was subject to racial animus, Plaintiff relies on his own conclusory testimony from the EEOC proceedings where he testified that unlike white employees, he was denied medical attention. [*Id.* at 24; Doc. 38-1 at 56]. That statement is directly contradicted by Plaintiff's deposition testimony in this case, where he acknowledged that he does not recall any employee ever going to agency medical after a chemical exposure. [*See* Doc. 35-1 at 103–04]. Plaintiff also points to the EEOC testimony of a co-worker from 2007 who worked with Plaintiff under a supervisor who no longer works with TVA. [Doc. 38 at 24; Doc. 38-1 at 50, 351–53]. Without mentioning any racial motivation, that co-worker testified that Plaintiff was probably harassed more than other employees. [Doc. 38-1 at 352–53]. These "conclusory and unsupported allegations, rooted in speculation, do not meet [the] burden" of the prima facie case. *See Bell v. Ohio State Univ.,* 351 F.3d 240, 253 (6th Cir. 2003) (citation omitted).

[8] Harassment occurs when the workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation omitted and cleaned up).

14

Title VII); *Plautz v. Potter*, 156 F. App'x 812, 818 (6th Cir. 2005) (discussing standard for hostile work environment under the Rehabilitation Act). Plaintiff cannot establish a hostile work environment claim because there is no evidence that he was harassed, much less that he was subject to harassment based on his race or disability.

Finally, no reasonable jury could find that Plaintiff was subjected to retaliation. To establish a prima facie case of retaliation under Title VII or the Rehabilitation Act, Plaintiff must show that: (1) he engaged in protected activity; (2) the employer knew of that activity; (3) the employer took an adverse action against plaintiff[9]; and (4) there was a causal connection between the protected activity and the adverse action. *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (6th Cir. 2018) (addressing retaliation claims under Title VII); *A.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013) (addressing retaliation claims under the Rehabilitation Act and ADA). Bates engaged in protected activity when he sought reasonable accommodation and when he registered his informal and formal EEO complaints. *See A.C.*, 711 F.3d at 698 ("Both this circuit and most others agree that requests for accommodation are protected acts."); *Simpson v. Vanderbilt Univ.*, 359 Fed. Appx. 562, 571 (6th Cir. 2009) (internal quotations and citation omitted) (observing that the Sixth Circuit "has interpreted protected activity broadly to include complaints to anyone . . . about allegedly unlawful practices."). And TVA was aware of Plaintiff's protected activity. But there is no evidence that Plaintiff was subjected to an adverse action, much less that there was a causal connection between an adverse action and his protected activity.[10]

---

[9] In the context of a retaliation claim, an adverse action "must be enough to dissuade a reasonable person from engaging in the protected activity; 'petty slights or minor annoyances' cannot qualify." *A.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 698 (6th Cir. 2013) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, (2006)).

[10] Plaintiff points out that on May 16, 2018, the same day he filed his EEO complaint, he was formally placed on leave-without-pay status because there was no modified work assignment available. [Doc. 38 at 21]. He suggests that this "same-day link" is evidence of retaliation.[10] [*Id.* at 21]. Notably, the EEO complaint includes an allegation that "[o]n May 16, 2018, Mr. Bates' request for reasonable accommodation was denied." [Doc. 38-1 at 39]. Hence, it seems Plaintiff submitted the EEO complaint in response to TVA's action, not the other way around. In any event, as

15

In sum, there is no evidence that Plaintiff was treated less favorably than others, harassed, or retaliated against because of his disability or his race. Therefore, his intentional discrimination claims fail.

## IV.    CONCLUSION

In sum, no reasonable jury could find that TVA discriminated against Plaintiff in violation of Title VII or the Rehabilitation Act. Accordingly, Defendant's Motion for Summary Judgment will be **GRANTED;** all other pending motions will be **DENIED as MOOT;** and this action will be **DISMISSED with PREJUDICE**.

An appropriate order will enter.

ENTER:

s/J. RONNIE GREER  
UNITED STATES DISTRICT JUDGE

---

discussed above, Plaintiff has not shown that there was a modified work assignment, for which he was qualified, available on May 16, 2018. And Plaintiff fails to explain how being formally placed in leave-without-pay status constituted an adverse action, given that he had already exhausted his paid leave. Indeed, the Sixth Circuit has recognized that leave-without-pay status can itself be considered a reasonable accommodation. *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 394 (6th Cir. 2017)) ("Under Sixth Circuit law, unpaid leave can constitute reasonable accommodation.").

16

Case 1:24-cv-00039-JRG-MJD    Document 42    Filed 02/23/26    Page 16 of 16
PageID #: 1434